CASE 36—PETITION ORDINARY—JUNE 25.

## Anderson vs. Sutton, &c.

APPEAL FROM GARRARD CIRCUIT COURT.

1. Although several cases, in the names of different plaintiffs, against the same defendant, may be heard at the same time, yet, if each retains its distinctive char-acteristics, and the judgment in each case is several, and the proceedings and

judgment in any of the cases be erroneous, such error must be fatal in that particular case, though the others may be free from error.

2. Clerks had authority to make a warning order against parties constructively summoned under *section 6 of act of 23d December*, 1861.

3. In proceedings against persons constructively summoned it is not necessary that a summons should issue against the defendant.

4. Where a sheriff returns, on an order of attachment, that he has levied it on land, and does not state how he levied it, the law, nothing appearing to the contrary, will presume he did his duty and left a copy with the occupant of the land, if there was one, and if none, that he posted up a copy in a conspicuous place on the property.

5. The heirs of a vendor who has not conveyed land sold are necessary parties to an action by his administrator to enforce the vendor's lien, and also to an action in which the administrator seeks by attachment to sell the land to pay the purchase money. (5 *Litt.*, 48; 2 *Dana*, 98; 6 *B. Mon.*, 74.)

6. That the heirs of the vendor were not made parties to an action in which land not conveyed was sold under attachment, will be so far prejudicial to the rights of the defendants as to be fatal to the judgment.

7. That no affidavit was filed as required by section 251, Civil Code, before a judgment for the sale of real property under attachment in an action in which the defendant has not appeared or been actually summoned, is fatal. (14 *B. Mon.*, 271.)

8. An affidavit for a provisional remedy by one other than the plaintiff must show that the affiant is the agent or attorney of the plaintiff.

9. When no attachment bond has been executed as required by *section 224, Civil Code*, the court should dismiss the attachment on hearing.

10. If neither the petition nor affidavit for an attachment states that the plaintiff's claim is just, and the amount the affiant believes the plaintiff ought to recover, the attachment should be discharged.

11. Where garnishees are summoned, who, as alleged by the plaintiff, owe an amount sufficient to pay his debt, and do not answer, it is error to render judgment for the sale of real estate to pay it; the debts garnisheed should be first applied to its payment. (*Sub-div.* 2, *sec.* 250, *Civil Code.*)

12. An attorney appointed under *section 440, Civil Code*, to defend for one constructively summoned, has no authority to consent to a judgment against the defendant, and a recital in a judgment against one not appearing that it was rendered by consent, will not sustain an erroneous judgment.

13. An appearance by an attorney of the court for a party in court will be *prima facie* evidence of his authority.

R. M. & W. O. BRADLEY, for appellant, cited 91*st sec. C. C.*; 328*th sec.*, *ib.*; *MS. opin.*, *Myers vs. Spillman*, &c., Oct., 1864; *sec.* 253, *C. C.*; 1*st*, 2*d*, *and* 3*d sub-divs.*, *sec.* 259, *C. C.*; 1*st sub-div.*, *sec.* 440, *C. C.*; *sec.* 251, *C. C.*; 6*th sub-div.*, 88*th sec.*, *C. C.*; 1*st sub-div.*, *sec.* 228, *C. C.*; *secs.* 221, 222, *C. C.*; *sec.*

253, *C. C.; MS. opin., Hardin vs. Halsell, June,* 1856; *Dunn vs. Salter,* 1 *Duv.,* 342; *Berryman vs. Mullins,* 8 *B. Mon.,* 154; 4 *B. Mon.,* 544, 545; 3 *Mon.,* 267; 2 *Mar.,* 500; 6 *Mon.,* 70; 7 *Mon.,* 658; 1 *Dana,* 462; 6 *Mon.,* 205; 2 *B. M.,* 245; 6 *Dana,* 325; 3 *Met.,* 546; 2 *J. J. Mar.,* 546; 7 *Mon.,* 324; 3 *J. J. Mar.,* 105; 12 *B. M.,* 600; 2 *J. J. Mar.,* 463; *Ib.,* 75; 1 *J. J. Mar.,* 166; 16 *B. M.,* 334; 7 *Mon.,* 658; 5 *J. J. Mar.,* 517; 7 *J. J. Mar.,* 539; 3 *Mon.,* 243.

S. TURNER, on same side, cited *Civ. Code, secs.* 88, 89, 228, 259, 446; 14 *B. Mon.,* 271; 6 *Mon.,* 70; 1 *Marsh.,* 249; *Hard.,* 94.

J. F. BELL and M. J. DURHAM, for appellees, cited *Civ. Code, sec.* 444.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

Appellees and others, claiming to be creditors of appellant, severally instituted proceedings in the court below to enforce the collection of their claims, and caused attachments to issue against his estate by virtue of the *act* of the *Legislature* approved 23d of December, 1861, entitled "*An act to amend the Code of Practice* in civil cases" (*Supple. to R. S., p.* 38), which were levied on a large and valuable real estate, including a number of slaves.

On the 22d of January, 1862, a receiver was appointed by the court below to take into his possession the property upon which the attachments had been levied, make out and return to court a complete inventory of all that might come to his hands, and, after advertising the time and place of sale, he was required to sell all the personal property of a perishable nature, except such as was by law exempt from sale under execution, which he was to leave with the wife of appellant for the use of herself and family.

The commissioner was directed to sell the personalty, at public outcry, on a credit of three months, at the residence of the appellant; and if the sale was not completed in one day, he was, by the order of sale, allowed a discretion to sell on different days. And after having laid off to the wife of appellant a part of his lands, including the mansion-house, &c., not to exceed in value one third of the whole of his land, and

setting apart to her such of his slaves as she might select, he was to proceed to hire out the other slaves and rent out the residue of the lands to the highest and best bidder to the end of that year, taking bonds with approved sureties from all who purchased property, hired slaves, and rented lands, payable to himself as receiver; and he executed bond with approved surety for the faithful performance of his duties as such receiver.

After having returned an inventory of the property which came to his possession, the receiver made sale of the perishable property, hired out the slaves, rented the lands as directed, and reported to the court the manner in which he had performed his duties, and his report was approved and confirmed.

The judgment of the 22d of January, 1862, is complained of by appellant.

The judgment conforms substantially to the provisions of *section* 239, *Civil Code*, and was fully authorized by said *section.* The act of the Legislature requiring notice to be given to the opposite party, or his attorney, of the intended application for an order for a sale of property of a perishable nature to a judge in vacation, was 'passed and took effect in *March,* 1862 (*Supple. to R. S., p.* 40), subsequent to the rendition of said judgment, which does not appear to be prejudicial to appellant, and is therefore *affirmed.*

The judgment rendered on the 26th of August, 1863, is the next in numerical order complained of as appears from the statement made at the close of the record by appellant's counsel, by which the attachments of Rodes, administrator of W. C. Anderson, deceased, L. B. Hudson, W. J. Lusk, Nannie B. Lusk, P. L. Summers, Clifton Anderson, Clifton Rodes, and O. Serrel, were sustained, and so much of the attached property ordered to be sold as would be required to pay them their respective debts.

While it is insisted by the counsel, on both sides, that the cases were heard together, and must, therefore, be regarded as one case, yet their conclusions as to the effect of such hearing are very different. Those for appellant contend that an error in either one of the cases should reverse all of them;

while those for appellees contend, that if, in any one of the cases, the proceedings are all regular and free from error, they should all be affirmed.   An examination of the judgment will show that the cases were not consolidated.   The statement in the judgment is, that " those of the above cases that were pending on the ordinary side of the court's docket having been transferred to equity, and the same having been heard together," &c., referring certainly to those only which had been transferred from the ordinary to the equity docket, while some of the cases were originally brought in equity, which would have been by implication, at least, excluded from those which were heard together.   But all this we deem unimportant, as it is manifest from the record, that, although all the cases were heard at the same time, each case retained its distinctive characteristics.   The judgment in each case is several; and if the proceedings and judgment in either or any of the cases be erroneous, such errors must be fatal in that particular case, however free others may be from error.

The first objection urged to this judgment is, that the clerk of the court had no legal authority to make the warning orders, and there was no constructive service of process in consequence of want of legal authority in the clerk to make those orders, and all proceedings subsequent thereto are void. A formal and somewhat extended answer to that objection is elicited by the zeal, and we may say confidence, with which it is urged.

Section 88, Civil Code, provides, that " where it appears by the affidavit of the plaintiff, filed in the clerk's office at or after the commencement of the action, that the defendant is—1. A foreign corporation, having no agent in this State; 2. Or a non-resident of this State; or, 3. Has departed from this State with intent to delay or defraud his creditors; or, 4. Has been absent from this State four months, or has left the county of his residence to avoid the service of a summons; or, 6. Conceals himself so that a summons cannot be served upon him; or where either of the two last mentioned facts is stated in the return, by the proper officer, of a summons against the defendant, the clerk shall make upon the peti-

tion an order, warning such defendant to appear in the action on the first day of the next term of the court, which does not commence within *sixty days* of the time of making the order."

The whole meaning of which is, that, in actions in which the plaintiff will make an affidavit that either of the facts exist enumerated in sub-divisions from 1 to 6 inclusive, the clerk shall make the order of warning, &c.; and where the facts stated in sub-divisions 5 and 6, or either of them, are stated in the return of a summons against the defendant, by the proper officer, the *clerk* may make the order of warning without the affidavit of the plaintiff. No other logical or rational conclusion can be reached from the language.

And by section 6, of act of 23d December, 1861, *supra*, warning orders may be obtained on any of the grounds set forth in sections first, second, and third of said act, against any defendant to whom they may apply, in the same manner, with the same effect in all respects, and subject to the same proceedings, as are now had for existing causes of constructive service by which the clerk was authorized to make the warning orders in these cases.

The judgment in favor of Sutton, according to the memorandum on the record, is not appealed from; and, whether erroneous or not, is not for us to say.

It has never been held by this court that a summons was necessary in proceedings of this character, which are in derogation of the common law. And the statutes authorizing them do not require, in express terms, a summons to issue; and as in such proceedings, *prima facie*, it could not be served if issued, and actual service not necessary to entitle the plaintiff to the relief sought, a failure to issue one should not be deemed erroneous.

The next objection urged against the judgment by appellant worthy of notice is, that the sheriff who executed the orders for the attachments failed to state in his returns that he executed them on the real estate, by leaving with the occupant thereof a copy of said orders, or that there was no occupant, and he posted up copies of them in a conspicuous place on said real property.

He stated in his return that he had levied the attachments on the property of the appellant, and gave a particular description of the property so levied upon. Nothing appearing to the contrary, the law presumes he performed his duty and complied with the requirements of the law, and his return must therefore be regarded as sufficient in the absence of countervailing evidence.

The first case to be disposed of, as they stand upon the record, is Clifton Rodes, administrator of William C. Anderson, deceased, against Clayton Anderson.

Although the petition on its face shows that the debt claimed by the appellee was owing for a tract of land sold by his intestate to appellant by executory contract, the legal title to which was in the heirs of the intestate, and that a clear equitable lien existed on the land for the unpaid purchase price, still he did not seek in his action to coerce the collection of the money owing by the enforcement of the equitable lien of a vendor, but resorted to the provisional remedy by attachment, and to secure a lien on the same land sold by his intestate by levying his attachment on it. That remedy might have been as effectual, though certainly not as direct and convenient, as the other. But whether he adopted the one mode or the other, a sale could not be made so as to confer on the purchaser a legal title to the land, unless he had made the heirs of his intestate—who, we may assume, in the absence of any allegation or proof to the contrary, are the holders of the legal title—defendants to his action. The heirs of William C. Anderson, deceased, were *necessary* parties, and were not before the court; and, unless they were united in a conveyance, the purchaser could not get a title. This inability to get a perfect title might, and doubtless did, prevent competition in bidding, and would injuriously affect the rights of appellant, and was so prejudicial to him as to be fatal to the judgment.

In Smith vs. West's executors (5 *Litt.*, 48), which was a suit by West's executor, after his death, to subject a tract of land sold by him in his lifetime to sale in satisfaction of a part of the price, without making his heirs parties either as complain-

ants or defendants, *this court said:* " The necessity of the heirs being parties to the suit is too obvious to require any argument to show it." To the same point are Edwards vs. Bohannon (2 *Dana,* 98), and Thornton, &c., vs. Knox's executor (6 *B. M.,* 74).

Other objections to the judgment in this case need not be noticed, as, upon the return of the cause, appellant will be allowed a reasonable time within which to file his answer and present any valid defense which he may have to the ' action. But for the error indicated the judgment in favor of *Clifton Rodes, administrator of William C. Anderson, against Clayton Anderson, is reversed,* and the cause remanded, with directions to permit him to amend his petition and bring all necessary parties before the court, if he should offer to do so within reasonable time, and for further proceedings consistent herewith.

In the case of L. B. Hudson against Clayton Anderson no affidavit was made and filed, as required by *section* 251, *Civil Code.* Consequently, an order for the sale of the real estate, before the requisite affidavit was filed, was premature and illegal. (*Payne vs. Witherspoon,* 14 *B. M.,* 271.) The judgment is therefore *reversed,* and the cause remanded for further proceedings consistent herewith.

In the case of W. J. Lusk against said Anderson and H. C. Myers, the petition does not contain a statement of sufficient grounds to sustain the attachment; and, although a statement in the nature of an affidavit, signed by appellee, Lusk, follows the petition, setting forth grounds which would authorize an attachment under the *act of the* 23*d December,* 1861, *supra,* that statement does not appear to have been sworn to, or is not so certified in the transcript before us.

Besides, appellee did not make and file an affidavit as required by *section* 251, *supra.* An affidavit sworn to by *S. Lusk is on file,* but it does not appear that he was either agent or attorney for the plaintiff below. It was improper to award an attachment without the requisite affidavit, or the necessary statements to authorize it being set forth in the petition; and it was erroneous to make an order for a sale of real estate

before filing an affidavit, under *section* 251, *supra*, sworn to by appellee or his agent or attorney; and the fact must appear in the affidavit that the party making the oath is the agent or attorney of the. plaintiff.   Wherefore, said judgment is *reversed* in favor of W. J. Lusk, and the cause remanded for further proceedings consistent herewith.

In the case of Nannie B. Lusk against Anderson & Myers, no bond appears to have been executed as required by *section* 224, *Civil Code*, nor did she make and file an affidavit as required by *section* 251, *Civil Code*.   The one filed was sworn to by Samuel Lusk, but it is not shown that he was either agent or attorney for plaintiff.

The clerk should not have issued the order of attachment until the proper bond had been executed; and without such bond, upon the hearing, the attachment should have been discharged.   Wherefore, the judgment in favor of Nannie B. Lusk is *reversed*, and the cause remanded for further proceedings consistent herewith.

In the case of L. P. Summers against Clayton Anderson and James McQuerry, the affidavit, as required by *section* 251, *Civil Code*, was not filed, and the order for the sale of appellant's real estate, without such affidavit, was unauthorized; and for that cause, if no other, the judgment must be reversed, and the cause remanded for further proceedings consistent herewith.

The petition in the case of Clifton Rodes contains no statement that his claim is *just*, nor that he believes he ought to recover the amount thereof.   No affidavit is attached to or accompanies the petition, and it does not appear that the same was sworn to.   For these defects in the proceedings the attachment should, on the hearing, have been discharged.

In his original petition, Overton Terrell alleged that Clayton Anderson was indebted to him in the sum of one hundred and seventy-one dollars, and filed with the same a bill of particulars, setting forth specifically the manner and amount of said indebtedness; garnisheed the amount thereof in the hands of Jennings and McQuerry, who, as he alleges, were indebted to said Anderson in a larger amount than he claimed of Ander-

Anderson vs. Sutton, &c.

son; asked a judgment against them, and did not pray for a sale of Anderson's property. The garnishees were served with summonses and the order of injunction, and *failed to answer.*

Subsequently to filing his original petition, to-wit: on the 26th of August, 1863, the same day on which the judgment complained of was rendered, he filed an amended petition, in which he stated that Anderson was entitled to a credit, on the amount claimed by him, of $100 for rent of land.

Notwithstanding said statement in said amended petition, a judgment was rendered in his favor against Anderson for $171, with interest from 14th of August, 1862, the amount claimed in the original petition, and real estate ordered to be sold to pay the same, although no affidavit was filed under *section* 251, *supra.* All of which was clearly erroneous.

The garnishees were summoned; failed to answer; no order for an attachment was ever made, nor was there one issued and executed. No bond was ever executed under *section* 440, *supra,* nor was any affidavit filed as required by *section* 251, *supra;* yet real estate was ordered to be sold to pay the full amount first claimed, with interest and costs, all of which is clearly erroneous.

Besides, before a sale of any real estate should have been ordered to pay this debt, the proceeds of the debts and funds attached in the hands of the garnishees should have been applied in satisfaction of his debt. (*Sub-div.* 2, *sec.* 250, *C. C.*) Consequently, said judgment is erroneous, and must be *reversed,* and the cause remanded for further proceedings consistent herewith.

In the case of Clifton Anderson vs. Clayton Anderson, A. J. Jennings, and Harrison Ray, the bond and affidavit, as required in *sections* 440 *and* 251, *Civil Code,* were not filed, and he sought to have so much of the debts owing by Jennings and Ray to appellants, as was necessary for the purpose, applied to pay his debt; and that fund should have been thus applied. (*Sub-div.* 2, *sec.* 250, *C. C., supra.*)

But it is finally insisted, that as the judgment recites that the counsel representing defendant, Clayton Anderson, con-

sented to the judgments, that he is bound thereby.   Whether
one or all of the attorneys who had been appointed under
*section* 440, *Civil Code*, to defend the various actions against
appellant, for him, consented to these judgments, is not stated.
But *he* certainly had not appeared in these actions himself.
The most that can be said, he had been constructively sum-
moned; and the reports of the various attorneys, who had
been appointed to defend for him in the different suits, show
that none of their communications on the subject of these
actions had reached him, and they had received no informa-
tion or instructions from him in relation to them.   The
appointment of an attorney to defend for him in each of
the various suits was made at the instance of the plaintiffs
therein, and they knew appellant had not been actually served
with process.

We do not controvert the point, that at this day an attorney
may be retained or appointed verbally out of court by a party
to an action.   This is well settled, and an appearance of an
attorney of the court for a party litigant in court will be
regarded as *prima facie* evidence of his authority.   But the
statement in the judgment, that the counsel for appellant
consented, under the facts and circumstances recited herein,
must be understood as referring to the counsel, or some of
those who had been previously appointed by the court, or the
clerk, to defend for him; and, under that appointment, the
attorney had no authority to give such consent; it is in con-
flict with the object of his appointment, as expressed in the
*section supra* authorizing it, and, if tolerated, might prove
ruinous to defendants constructively summoned.   By the ex-
press language of the *Code of Practice*, it is made the duty of
such appointees to *defend* the actions for the party sued, not
to aid the plaintiff in procuring a judgment against the
defendant, the very thing, from the nature of his appoint-
ment, it was his duty to prevent.

Nor is there anything in the argument that the attorney,
who consented to the rendition of the judgments, had thereby
subjected himself to such damages as appellant might have
sustained by reason of his consent.   The record fails to show

by whom the consent was given, and it might be very difficult to prove which one of the several attorneys did consent to it; and, even if the fact was disclosed by the record, the liability of the attorney would, in many cases, prove entirely insufficient to protect the rights of the defendant.

We are, therefore, satisfied that the errors pointed out are not cured by the statement in the judgment that it was consented to by one who was paid to *resist*, and·*not to consent*, to a recovery.

The judgment rendered on the 25th of February, 1865, for the sale of an additional quantity of land, was erroneous; for more land had been sold previous to that judgment than was authorized or should have been sold, as has been already pointed out. Wherefore, said judgment is also *reversed*, and the cause remanded, with directions that time be given the plaintiffs in the several actions named to amend the pleadings where it is proper, if they should in reasonable time ask to do so; and if, in any of the cases, upon the return of the cause, it should appear that bonds, as required by *section* 224, had not been executed before the orders for attachments were made, the attachments in such cases should be discharged, and appellant should be allowed a reasonable time to put in his answer and defend said actions, if he should desire to do so, by presenting valid defenses.